UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PNEUMATIC TRUCKING, INC.,**

       **Plaintiff,**              **CASE NUMBER: 05-74875**
                                        **HONORABLE VICTORIA A. ROBERTS**

v.

**LOCAL 164 INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, AND LOCAL 406,
INTERNATIONAL BROTHERHOOD OF TEAMSTERS,**

       **Defendants.**
_____/


## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons stated, the Court **DENIES** Defendants' motion.

**II.    BACKGROUND**

Pneumatic Trucking, Inc. ("Plaintiff") filed suit against International Brotherhood of Teamsters, Local 164 and Local 406 ("Local 164" and "Local 406") (collectively "Defendants") for breach of a collective bargaining agreement ("CBA") under Section 301 of the Labor Management Relations Act. Plaintiff is an over-the-road trucking company. In 1999, Plaintiff entered into a CBA with Local 406. Under the terms of the CBA, Local 406 paid pension benefits on behalf of its represented employees to Central States Pension Fund. In 2001, Local 406 and Plaintiff discussed amending the CBA to

1

replace the Central States Pension Fund with a 401(k) plan.

Before formalizing the amendment in writing, Local 406 discovered that a majority of its members employed by Plaintiff were within the geographic jurisdiction of Local 164. Local 406 assigned its status as a bargaining agent under the CBA to Local 164. On August 1, 2002, Local 164 notified Plaintiff of the assignment. According to Plaintiff, Local 164 refused to execute the amended CBA.

Plaintiff filed an unfair labor practice charge against Local 164 with the National Labor Relations Board. On December 17, 2003, Local 164 agreed to execute the amended CBA in order to settle the unfair labor practice case. However, Local 164 did not execute the amended CBA until May 5, 2004. Plaintiff did not contribute to the pension fund during this time and now claims that its liability for pension fund contributions and for withdrawing from Central States increased from $32,991.02 to $114,233.96. Plaintiff filed suit seeking these costs.

In response, Defendants argued that Plaintiff must follow the CBA grievance procedure before filing suit. Article VII of the CBA sets forth an "arbitration and grievance" procedure which requires the parties to submit any controversy to a Joint State, Multi-State, or Joint Area Committee before instituting legal proceedings. Defendants move to dismiss Plaintiff's claim for failure to exhaust administrative remedies. At a status conference with the Court, the parties agreed to follow this procedure.

Shortly thereafter, the parties discovered that the Joint Area Committee referenced in the CBA no longer existed and would not hear the grievance. The parties then agreed to submit the dispute to the Central States Tank Truck Joint Area

Committee (JAC). On October 5, 2006, the parties presented their case to the JAC, which consisted of employer and union representatives. Each party was given the opportunity to introduce evidence and present claims. By a majority vote, the JAC ruled in favor of Defendants. The JAC award stated: "Based upon the facts presented [,] the Committee finds no violation of the collective bargaining agreement[,] neither expressed nor implied."

In response to the decision, one of Plaintiff's representatives asked if the ruling was based on a lack of jurisdiction over the case. According to Defendants, the JAC stated the decision was based on the merits. Therefore, at the request of Local 164, the JAC issued a clarification of its award on November 16, 2006. In the clarification, the JAC succinctly held that it "had jurisdiction over the grievance" and "the Unions (Locals 164 and 406) did not violate any express or implied provisions of the collective bargaining agreement."

Based on this, Defendants seek summary judgment arguing that the JAC award is "binding" and Plaintiff's exclusive remedy under the CBA.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor.

*Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. Am. Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). Once the moving party meets its burden, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. When the nonmoving party fails to make this showing and the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

**IV.    ANALYSIS**

Plaintiff filed suit pursuant to Section 301 of the Labor Management Relations Act ("LMRA"). Section 301(a) provides a federal remedy for breach of collective bargaining agreements. *Groves v. Ring Screw Works*, 498 U.S. 168, 172 (1990); *see also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976). National labor policy favors judicial enforcement of collective bargaining agreements and there is a strong presumption under § 301 that parties have access to judicial forums to resolve disputes involving CBAs. *Id.*; 29 U.S.C. § 185(a) ("[S]uits for violations of contracts between an employer and a labor organization . . . may be brought in any district court of the United

4

States."). This presumption is only overcome if the parties agree to a different method to resolve their disputes. *Id.* at 173-74. Courts must give full effect to any form of "final" adjustment the parties agree upon. *Hines*, 424 U.S. at 562.

However, a CBA that seeks to preclude judicial participation in the resolution of disputes or judicial review of a mediation process must be clear to be enforced. *Aeronautical Indus. Dist. Lodge of Intern. Ass'n of Machinists and Aerospace Workers v. United Technologies Corp.*, 230 F.3d 569, 575 (2d Cir. 2000)(citing *Groves*, 498 U.S. at 174-76).

According to Defendants, summary judgment is appropriate because the JAC procedure is final and, therefore, precludes judicial review of the award. Defendants assert that the JAC award is "final and binding" because: (1) joint employer-union grievance panel decisions are entitled to the same deference as arbitration decisions; (2) Plaintiff agreed to submit the claim to the JAC; (3) the CBA and the parties past history indicate that the JAC procedure is the exclusive remedy; and (4) Plaintiff waived any objection to the finality of the JAC award by submitting to the procedure after the start of litigation.

Plaintiff argues that the terms of the CBA make clear that the grievance procedures is not an "exclusive remedy" and that the JAC decision is not "final and binding." Further, Plaintiff asserts that its compliance with the grievance procedure did not waive its rights to judicial review and at the very least there is a question of fact regarding the parties past use of the grievance procedure as an exclusive remedy.

      A*.*    *Final and Binding CBA*

The CBA does not clearly preclude judicial resolution of disputes. Article VII of the CBA establishes a Joint State or Multi-State Committee that will have jurisdiction over disputes and grievances involving local unions or complaints by local unions located in its state or geographical jurisdiction. Section 7 states that the Joint Area Committee will have jurisdiction over "desposition (sic) of any grievance which cannot be settled at the lower level" and "interpretation of the provisions of this Agreement." Further, Section 9 provides "[t]he Union and the Employer agree there shall be no strike, lockout, tie-up or legal proceedings without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise." The terms "final and binding" do not appear in Article VII. Despite this, Defendants argue that the language of Article VII, specifically Section 9, is sufficient to demonstrate the grievance procedures is the parties exclusive remedy to resolve disputes.

Further, Defendants maintain that the decisions made by joint employer-union grievance panels are entitled to the same deference given an arbitrator under national labor law. Defendants also make much of the fact that the grievance panel decided the claim on the merits by a majority vote. While the Court recognizes the validity of these arguments, they are not dispositive or particularly relevant to the main issue presented. *See Teamsters Freight Employees Local Union No. 480 v. Bowling Green Express, Inc.*, 707 F.2d 254, 256 (6th Cir. 1983)(stating that final and binding decisions made by joint employer-union grievance panels are entitled to the same deference given an arbitrator's decision under national labor law); *see also Edwards v . United Parcel Services*, 16 Fed.Appx. 333, 337 (6th Cir. 2001).

Here, the dispositive issue is rather simple; that is, whether the grievance

procedure outlined in the CBA is Plaintiff's exclusive remedy when the CBA does not provide that the grievance procedure is final, binding, or the exclusive means of resolving the dispute. Courts hold that where the CBA does not expressly provide that the arbitration or grievance procedure is "final and binding" or the exclusive means of resolving a dispute, the award is not final and does not preclude suit under section 301. *Dow Corning Corp. v. Safety Nat'l Casualty Corp.*, 335 F.3d 742 (8th Cir. 2003); *Aeronautical Indus. Dist. Lodge of Intern. Ass'n of Machinists and Aerospace Workers v. United Technologies Corp.*, 230 F.3d 569, 575 (2d Cir. 2000); *Orlando v. Interstate Container Corp.,* 100 F.3d 296 (3d Cir. 1996).

In *Dow Corning Corp.*, the Eighth Circuit stated that "[p]arties intending binding arbitration should say so explicitly in the agreement to arbitrate [or CBA], either by providing that the arbitration award will be "final and binding," or words to that effect, or by incorporating by reference the rules of the American Arbitration Association or a similar arbitral body that expressly provide for binding arbitration." *Dow Corning Corp.*, 335 F.3d at 745.

Similarly, the Third Circuit in *Orlando* noted that "[c]ollective bargaining agreements almost invariably explain that arbitration proceedings will be "final," "binding," or "exclusive," such that when an agreement is silent to that point it would indicate that it was not the parties' intent to give the proceedings dispositive effect. *Orlando*, 100 F.3d at 301. There the employer argued that because the agreement made arbitration mandatory the arbitrator's decision was also final and binding despite the lack of applicable language in the collective bargaining agreement. *Id.* at 300-301. The Court held that "where the words 'final,' 'binding,' or 'exclusive' don't appear, and

7

where the parties have not shown a history of giving dispositive effect to arbitration decisions, [it could not] conclude that they intended to overcome the presumption favoring access to a judicial forum." *Id.*

This CBA does not expressly provide that the grievance procedure is "final and binding" or that it is an exclusive remedy. Instead the terms of the grievance procedure indicate that further legal proceedings are anticipated. Section 9 says that there will be no strike or legal proceeding *without first* using all possible means of settlement. This language does not preclude court action; rather, it simply indicates that the grievance procedure is a condition precedent to litigation or other dispute resolution methods.

In the cases cited by Defendants, the collective bargaining agreements expressly provided that arbitration or the grievance procedure was final and binding, which is not the case here. *See Communications Workers of Am. v. AT&T*, 40 F.3d 426, 434 (D.C. Cir. 1994)(holding that the CBA which stated that the grievance procedure would be "employed" required mandatory arbitration); *Teamsters Freight Employees Local Union No. 480 v. Bowling Green Express Inc.*, 707 F.2d 254, 256 (6th Cir. 1984)(holding state committee award binding where CBA expressly stated that the committee award was final and binding and that the parties could not appeal a committee decision). Defendants cite no cases holding otherwise.

The Court declines to find that the JAC decision is binding when the CBA terms provide no basis for such a construction.

### B. History of the Parties

Nonetheless, Defendants argue that the parties have historically given JAC and arbitration decisions dispositive effect. In addition, Defendants claim that the terms

"final and binding" were omitted from the CBA by scrivener's error. In an affidavit, Tom Freyling ("Freyling"), a Local 406 representative, attests that the parties previous collective bargaining agreement in 1997 contained "final and binding" language.

During the negotiations of the 1999 CBA, Freyling states that Plaintiff proposed changes to the grievance procedure to include language for Cement Carrier Associations. On August 9, 1999, Plaintiff's attorney sent Freyling a letter providing the procedures of the Cement Carriers Joint State Committee ("Cement Carriers") as an option for arbitrating disputes. Article VIII of the Cement Carriers procedure provides that joint and multi-state committee decisions would be final and binding. According to Freyling, neither party sought to delete the final and binding language from the collective bargaining agreement and both parties agreed to include the Cement Carriers procedures. Freyling says that his failure to include the language in the final agreement was "wholly inadvertent." Further, he states that from 1997 through 2003 Local 406 resolved all grievances filed by Pneumatic employees without recourse to the joint committee procedure. Defendants also submit an affidavit by Alan D. Sprague, the president of Local 164 since 2001, attesting that Plaintiff has never questioned the finality of a grievance decision during his tenure or during the JAC hearing.

In rebuttal, Plaintiff argues that the CBA referenced a joint grievance committee that no longer existed. Accordingly, "past practices" predate the CBA entered in 1999 and are irrelevant. Moreover, Plaintiff maintains that Defendants are not entitled to relief based on Freyling's *unilateral* mistake.

In *Orlando*, the Third Circuit noted that the parties' intent to give dispositive effect to arbitration decisions may be shown by past history even when the CBA lacks

finality language.  *Orlando*, 100 F.3d at 301.  The "past history" discussed in Freyling's affidavit, which Plaintiff argues at the very least creates an issue of fact, does not clearly indicate that the parties intended to maintain a "final and binding" grievance procedure.

For instance, in a February 18, 2000 letter Freyling writes to Plaintiff's counsel stating that he is including the grievance language in Article VIII, section 1 of the Cement Carriers agreement under Article VII of the CBA *but leaving out* the last paragraph of Article VIII, section 1 because he thought that it did not apply to the agreement.  The last paragraph of Article VIII, section 1, states that a decision by a Joint State Committee "will be final and binding on both parties."  Thus, it does not appear that Freyling's omission of "final and binding" language was "wholly inadvertent."

Based on the evidence presented, the Court cannot conclude that the parties conduct and bargaining history clearly demonstrate an intent for the grievance procedure to be an exclusive remedy a genuine issue of material fact exists.

   C.  *Mutual Mistake*

For these same reasons, the Court finds that a genuine issues of material fact exists as to whether Defendants failure to include the phrase "final and binding" was a mutual mistake or scrivener's error.  Defendants claim that the Court should reform the agreement to include the language because: (1) there was mutual mistake; and (2) Freyling failure to transcribe the negotiations into a new contract was inadvertent.

A party seeking reformation of an agreement based on mutual mistake must present clear and convincing evidence that the agreement as written does not express the true intention of the parties and that there was mutual mistake.  *Dingeman v. Reffitt*,

152 Mich.App. 350, 358 (Mich.App. 1986). "A mutual mistake occurs when the belief by parties to a contract is not in accord with the facts, and the mistaken belief relates to a basic assumption upon which contract is made and which materially affects agreed performances of parties." *Madias v. Madias Bros., Inc.*, No 188697, 1997 WL 33352833, *1 (Mich.App. April 29, 1997) (citing *Lenawee County Bd of Health v. Messerly*, 417 Mich. 17, 29-30(1982)). Courts may also reform an agreement of the parties which fails through the mistake of the scrivener. *Newland v. First Baptist Church*, 137 Mich. 355 (Mich. 1904). To reform a writing based on mutual mistake, the Court must find that some provision agreed upon was omitted and reforming the agreement by inserting the provisions would change the instrument to the contract agreed upon. *See Coyne v. Smirall Corp.*, 140 F.2d 574, 577 (6th Cir. 1944).

Unlike a mutual mistake, a unilateral mistake is not sufficient to warrant reformation. *Casey v. Auto Owners Ins. Co.*, 273 Mich.App. 388, *398 (Mich.App. 2006). A unilateral mistake is voidable where the mistake involved a "basic assumption on which . . . the contract has a material effect" and enforcement of the contract would be unconscionable or the other party had reason to know of the mistake or caused it. Restatement (Second) of Contracts 153.

Plaintiff contends that Defendants efforts to reform the CBA fail because the mistake was unilateral. Plaintiff asserts that because it did not know about the error and participated in the grievance procedure, Defendants cannot now claim the CBA should be reformed to something other than what the parties agreed. The record however does not clearly establish whether the parties intend to omit the "final and binding" language or whether the omission was unilateral or mutual mistake.

11

Further, it is not clear whether the parties ever initially agreed on the inclusion of the "final and binding" language.  The language was in the Cement Carriers agreement, which Plaintiff's sought to include in the CBA.  However, Freyling's letter indicates that the parties contemplated modifying the grievance language of the Cement Carriers agreement.  Further, it appears that Freyling believed that the section discussing "final and binding" grievance procedures did not apply to the parties agreement.  Viewing this evidence in a light most favorable to Plaintiff, it fails to clearly establish that the parties agreed to the inclusion of the "final and binding" language and that a mutual mistake occurred.  Thus, the Court finds Defendants fail to present clear and convincing evidence of a mutual mistake warranting summary judgment.

> ### D. Waiver of Right to Sue

Finally, Defendants claim that Plaintiff waived its right to sue by submitting to the grievance procedure after litigation began. In support of their argument, Defendants cite NLRB decisions which hold that a party only waives its right to litigation when it agrees that the grievance procedure will be final and binding.  *See Columbus Foundries*, 229 NLRB 34 (1977).  The NLRB decisions cited actually support Plaintiff's position – that it is necessary for parties to agree a grievance procedure will be "final and binding" because a party can submit to a dispute resolution procedure without waiving its right to sue.  Absent a finding that the parties agreed the grievance procedure would be binding, Defendant's waiver argument is without merit.

## V. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED**.

                                                S/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: July 27, 2007

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 27, 2007.
>
> s/Carol A. Pinegar
> Deputy Clerk